STATE *ex rel.* KENARD BETTS

*v.*

THE HONORABLE GEORGE M. SCOTT, *Judge, etc., et al.*

(No. 14707)

Decided June 4, 1980.

Alan H. Simms for petitioner.

Chauncey H. Browning, Attorney General, David P. Cleek, Assistant Attorney General, for respondents.

MILLER, JUSTICE:

The principal question presented by this original proceeding in prohibition is whether double jeopardy principles bar a reprosecution where the first trial was ended by the defendant's motion for mistrial. The basis for the mistrial here was the failure of the prosecution to comply completely with our evidentiary rules regarding the admissibility of relator's blood alcohol test. A question is also raised as to the validity of the conviction under our statute relating to second offense drunk driving.

On May 16 and 19, 1978, relator Kenard Betts was tried in the Circuit Court of Calhoun County for the offense of driving a motor vehicle "while ... under the influence of alcohol." *Code* 17C-5-2(a)(1). The indictment charged Betts with a second offense of drunk driving under *Code* 17C-5-2(d), which carries an enhanced penalty.

At trial the State sought to establish that Betts, while intoxicated, backed a pickup truck across a highway—Route 16 between Grantsville and Millstone—causing a chain reaction collision with two parked automobiles. He then caused the truck to career into a guardrail and knock over a mailbox. The truck finally stopped in the middle of the road.

In order to prove intoxication, the prosecutor relied in part upon the testimony of local residents, who stated with varying degrees of certainty that Betts appeared intoxicated. The prosecutor's remaining evidence consisted of a blood test administered by qualified personnel of a local hospital at the direction of the Grantsville policeman who arrested the defendant.[1]

A State Police chemist testified that his examination of the blood sample purportedly taken from Betts resulted in a finding of an alcoholic content of "0.28% ... by weight."[2]

---

[1] W. Va. Code, 17C-5A-1, *et seq.*, governs the procedures for administering various tests to determine a driver's degree of intoxication.

[2] Under W. Va. Code, 17C-5A-5(c), a chemical analysis of blood demonstrating that there was, at the time of the arrest or alleged

At the conclusion of the State's case, Betts moved for a directed verdict on the grounds that the lay opinion evidence of intoxication was "equivocal" and that the results of the blood analysis were inadmissible. The trial judge declined to grant a directed verdict, stating that even in the absence of blood test evidence, the lay opinion evidence was "sufficient to create a prima facie case." The judge went on to state, however, that he was "bother[ed]" that the State had not proved, in accordance with W. Va. Code, 17C-5A-5, that the chemical analysis of the defendant's blood had been "performed in accordance with methods and standards approved by the state department of health."[3] He also recognized that under this Code section and *State v. Dyer*, 160 W.Va. 166, 233 S.E.2d 309 (1977) [*see State v. Hood*, 155 W.Va. 337, 184 S.E.2d 334 (1971)], compliance with such methods and standards is necessary "in order to give rise to the presumptions or to have the effect provided for in subdivisions (a), (b) and (c) of this section." The trial judge informed defense counsel that "if the blood tests are improperly admitted, you have grounds for mistrial." Following a recess, defense counsel made the

---

act or not more than two hours later, "ten hundredths of one percent or more, by weight, of alcohol in [the] blood," shall constitute "prima facie evidence that the person was under the influence of intoxicating liquor." In *State v. Ball*, ___ W.Va. ___, 264 S.E.2d 844 (1980), we upheld the validity of this statute's prima facie language.

[3] The pertinent portion of W. Va. Code, 17C-5A-5, which requires that blood tests must be performed according to Department of Health methods and standards before the test will constitute evidence, states:

"A chemical analysis of a person's blood, breath or urine, in order to give rise to the presumptions or to have the effect provided for in subdivisions (a), (b) and (c) of this section, must be performed in accordance with methods and standards approved by the state department of health. A chemical analysis of blood or urine to determine the alcoholic content of blood shall be conducted by a qualified laboratory or by the state police scientific laboratory, of the criminal identification bureau of the department of public safety."

motion for mistrial, and the trial court granted the motion.[4]

## I

In any discussion of the broad topic of double jeopardy, it is important to keep in mind that double jeopardy is composed of a number of different principles.[5] Despite the deceptively simple statement in the Fifth Amendment to the United States Constitution, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb,"[6] double jeopardy has evolved

---

[4] The case was then set for another trial and the relator filed a plea of double jeopardy, which was overruled. The second trial resulted in a hung jury and a further mistrial and the relator filed this writ of prohibition on double jeopardy grounds to preclude a further trial. Relator recognizes that the second trial which ended in a mistrial because of the failure of the jury to agree does not give rise to an additional ground for double jeopardy. *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L. Ed. 165 (1824).

[5] Double jeopardy in the traditional sense is concerned with the defendant being retried for the same offense after he had earlier been convicted or acquitted on the offense. The focus in this area has been how to define "the same offense" and whether lesser included offenses are covered. *See Jeffers v. United States*, 432 U.S. 137, 53 L. Ed. 2d 168, 97 S.Ct. 2207 (1977); *Iannelli v. United States*, 420 U.S. 770, 43 L. Ed. 2d 616, 95 S.Ct. 1284 (1975); *Gore v. United States*, 357 U.S. 386, 2 L. Ed. 2d 1405, 78 S.Ct. 1280 (1958). A parallel problem arises from the dual sovereignty of state and federal governments such that a defendant could be exposed to multiple trials for the same offense by separate prosecutions in state and federal courts. *See Thompson v. United States*, 444 U.S. 298, 62 L. Ed. 2d 457, 100 S.Ct. 512 (1980); *Abbate v. United States*, 359 U.S. 187, 3 L. Ed. 2d 729, 79 S.Ct. 666 (1959); *Bartkus v. Illinois*, 359 U.S. 121, 3 L. Ed. 2d 684, 79 S.Ct. 676 (1959). Subsidiary problems arise on claims that multiple punishments are being inflicted for the same offense, which is forbidden under jeopardy principles. *Ex parte Lange*, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1873). Since jeopardy is deemed to attach at the time the jury is empanelled and sworn, *Crist v. Bretz*, 437 U.S. 28, 57 L. Ed. 2d 24, 98 S.Ct. 2156 (1978), jeopardy becomes a consideration on midtrial terminations. *See* Westen & Drubel, *Toward a General Theory of Double Jeopardy*, 1978 Supreme Court Review 81, *et seq.*

[6] The West Virginia Constitution, Article III, Section 5, provides: "[N]or shall any person, in any criminal case ... be twice put in jeopardy of life or liberty for the same offence."

from rather simple and harsh English common law origins to a complex constitutional question in this Country.

The question presented in this case—whether double jeopardy can be asserted on retrial where the first trial terminated in midtrial as the result of a defense motion for mistrial—was largely unknown in the English common law. This was because in English common law, the right to claim jeopardy arose by virtue of the pleas in bar of *autrefois acquit* and *autrefois convict*, which were available only after the first trial had ended in either a conviction or acquittal by the factfinder. Thus, if the trial was broken for any reason before the final judgment of acquittal or conviction, a jeopardy plea was not available and a retrial could occur.[7]

Notwithstanding the English rule, the United States Supreme Court has considered jeopardy to be implicated on a midtrial break. The classic formulation of the initial exception to the bar of jeopardy on midtrial terminations is found in Justice Story's opinion in *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L. Ed. 165 (1824), where a "manifest necessity" resulting from a hung jury was deemed sufficient to abort the trial and permit a retrial.[8]

---

[7] A history of the English common law of double jeopardy may be found in the following: Mayers and Yarbrough, *"Bis Vexari": New Trials and Successive Prosecutions*, 74 Harv. L. Rev. 1 (1960); Note, *Double Jeopardy: The Reprosecution Problem*, 77 Harv. L. Rev. 1272 (1964); Note, *Twice in Jeopardy*, 75 Yale L.J. 262 (1965).

[8] Read literally, *Perez* held only that retrial was permissible because there had been no judgment of conviction or acquittal:

"We are of opinion, that the facts constitute no legal bar to a future trial. The prisoner has not been convicted or acquitted, and may again be put upon his defence." [22 U.S. (9 Wheat.) at 580, 6 L. Ed. at 165]. *Perez'* discussion of "manifest necessity" was dictum, directed at setting a standard for the trial courts' discretion in declaring mistrial, and did not contain any reference to the Double Jeopardy Clause or the concern underlying that Clause for the burden and harassment to which a defendant is exposed as a result of retrial. The cases immediately following *Perez* adopted its view that jeopardy does not attach where no judgment of conviction or acquittal has occurred, and held that a manifest necessity for mistrial existed. *E.g., Thompson v. United States*, 155 U.S. 271, 39 L.

In a series of cases, the United States Supreme Court has sought to establish guidelines as to what type of midtrial terminations will trigger double jeopardy so that a retrial is barred. The manifest necessity exception that will forestall jeopardy has evolved to the point that "the strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence, or when there is reason to believe that the prosecutor is using the superior resources of the State to harass or to achieve a tactical advantage over the accused." *Arizona v. Washington,* 434 U.S. 497, 508, 54 L. Ed. 2d 717, 730, 98 S.Ct. 824, 832 (1978). Moreover, there is the further requirement that before a midtrial break on manifest necessity grounds will be upheld, it must be shown that the trial court explored reasonable alternatives to a mistrial before granting a mistrial. *See Arizona v. Washington, supra; United States v. Jorn,* 400 U.S. 470, 27 L. Ed. 2d 543, 91 S.Ct. 547 (1971) (plurality opinion); *Harris v. Young,* 607 F.2d 1081, 1085 (4th Cir. 1979), *cert. denied,* 444 U.S. 1025, 62 L. Ed. 2d 659, 100 S.Ct. 688. It can be generally stated that a manifest necessity ground is one which arises from circumstances not within the control of the prosecution or the court.

Another category of midtrial termination consists of prosecutorial or judicial overreach, which creates a prejudicial climate against the defendant. In this situation, the defendant is entitled to procure a mistrial which will then result in a bar against retrial. *United States v. Dinitz,* 424 U.S. 600, 47 L. Ed. 2d 267, 96 S.Ct. 1075 (1976); *United States v. Kessler,* 530 F.2d 1246 (5th Cir. 1976); *cf. United States v. Tateo,* 377 U.S. 463, 12 L. Ed.

Ed. 146, 15 S.Ct. 73 (1894) (mistrial because a juror had served on grand jury which had indicted the defendant); *Logan v. United States,* 144 U.S. 263, 36 L. Ed. 429, 12 S.Ct. 617 (1892) (mistrial for hung jury after jury had deliberated for 40 hours); *Simmons v. United States,* 142 U.S. 148, 35 L. Ed. 968, 12 S.Ct. 171 (1891) (mistrial where letter published in paper rendered juror's impartiality doubtful). It was not until *Downum v. United States,* 372 U.S. 734, 10 L. Ed. 2d 100, 83 S.Ct. 1033 (1963), that double jeopardy was found to preclude retrial after a mistrial. There, the mistrial resulted from the failure of a key prosecution witness to attend the trial.

2d 448, 84 S.Ct. 1587 (1964). In the overreach area, the focus is upon the bad faith misconduct which has prejudiced or harassed the defendant. *Lee v. United States,* 432 U.S. 23, 33, 53 L. Ed. 2d 80, 89, 97 S.Ct. 2141, 2147 (1977).[9]

Between these two categories lies a third, which has no simple label but involves situations where the basis for mistrial is a mistake of law committed by the prosecutor during the criminal proceedings which may or may not actually prejudice the defendant in front of the jury, but which would result in a substantial probability of reversible error if the point were appealed. It is in this area that the most difficulty is encountered, perhaps because there is a tendency to analyze the double jeopardy problem by resorting to psychological or subjective labels, such as protecting the defendant from "embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity ....", *Green v. United States,* 355 U.S. 184, 187, 2 L. Ed. 2d 199, 204, 78 S.Ct. 221, 223 (1957), or protecting his "valued right to have his trial completed by the particular tribunal," *Downum v. United States,* 372 U.S. 734, 736, 10 L. Ed. 2d 100, 102, 83 S.Ct. 1033, 1034 (1963).

These beguiling labels tend to obscure the fact that the Double Jeopardy Clause has never been thought to mean that a defendant may never be subjected to more than one trial no matter how complete the first trial, or regardless of the terms upon which it was terminated,

---

[9] Conceptually, it is conceivable that the defendant's conduct or that of his counsel might be so outrageous and in such bad faith that the state's case is prejudiced and a mistrial should be granted to the prosecution. The United States Supreme Court, however, has not recognized a separate exception to double jeopardy for defense overreach, but instead treats such conduct under the manifest necessity exception. *see, e.g., Arizona v. Washington,* 434 U.S. 497, 54 L. Ed. 2d 717, 98 S.Ct. 824 (1978) (prosecution granted mistrial because of defense attorney's prejudicial remarks in front of jury; jeopardy held not to bar retrial); *United States v. Dinitz,* 424 U.S. 600, 47 L. Ed. 2d 267, 96 S.Ct. 1075 (1976) (mistrial granted defense after court expelled one of two attorneys from courtroom for improper conduct; retrial permitted).

and irrespective of whether it was reversed on appeal.[10] Once it is recognized that there are certain exceptions to the double jeopardy bar, such as manifest necessity and the right to retry if the defendant obtains a reversal on appeal for trial error, it is obvious that the concepts of embarrassment, anxiety and cost to the defendant on a retrial, or his valued right to the same tribunal, are not absolute. This is true because a defendant, retried as a result of his first trial having ended on the ground of a manifest necessity or having been reversed on appeal, has been deprived upon retrial of his valued right to have his case determined by the original tribunal and has been subjected to the embarrassment, anxiety and cost of a second trial.

Moreover, there has always been a clear recognition that the demands of public justice should afford the state a reasonable opportunity to present its case against the defendant and that it should not be penalized because of conditions beyond its control which require a midtrial termination or because of a successful reversal on appeal for trial error. This point is summarized in *United States v. Tateo, supra,* 377 U.S. at 466, 12 L. Ed. 2d at 451, 84 S.Ct. at 1589:

> "[O]f greater importance than the conceptual abstractions employed to explain the Ball [*United States v. Ball,* 163 U.S. 662, 41 L. Ed. 300, 16 S.Ct. 1192 (1896)] principle are the implications of that principle for the sound administration of justice. Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price

---

[10] *United States v. Ball,* 163 U.S. 662, 41 L. Ed. 300, 16 S.Ct. 1192 (1896), recognized that where a defendant had successfully appealed his conviction, a retrial was not precluded by double jeopardy. This point was modified in *Burks v. United States,* 437 U.S. 1, 57 L. Ed. 2d 1, 98 S.Ct. 2141 (1978), which overruled *Ball* to the extent that, if the error is evidentiary insufficiency, that is, the prosecution has failed to prove all of the essential facts to establish guilt, then double jeopardy will bar a retrial. *See State v. Frazier,* ___ W.Va. ___, 252 S.E.2d 39, 50-53 (1979), and *State v. Milam,* 163 W.Va. 752, 260 S.E.2d 295, 302-03 (1979).

indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. . . ."

The Double Jeopardy clause does not permit, however, an attempt by the state to retry the defendant for the same offense once he has been acquitted or convicted by the factfinder, or to conduct the prosecution in such a manner that the defendant is harassed by abortive attempts to try him. This perhaps has been the historical basis for giving consideration to double jeopardy principles on midtrial terminations, as summarized in *Arizona v. Washington, supra*:

"Although there was a time when English judges served the Stuart monarchs by exercising a power to discharge a jury whenever it appeared that the Crown's evidence would be insufficient to convict, the prohibition against double jeopardy as it evolved in this country was plainly intended to condemn this 'abhorrent' practice. As this Court noted in United States v. Dinitz, 424 US 600, 611, 47 L Ed 2d 267, 96 S Ct 1075:

" 'The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where 'bad-faith conduct by judge or prosecutor' . . . threatens the '[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant." [434 U.S. at 507-08, 54 L. Ed. 2d at 729-30, 98 S.Ct. at 831-32].

As a result of the concern that harassment may occur where the state is allowed to seek mistrials, it has generally been held that if the prosecutor seeks and obtains a mistrial, or if one is declared *sua sponte* by the trial court for trial error by the state, then the defendant is entitled to the bar of double jeopardy on a retrial. *Downum v. United States, supra; United States v. Martin Linen Supply Co.*, 430 U.S. 564, 51 L. Ed. 2d 642, 97 S.Ct. 1349 (1977).

Where, as in the present case, the defendant moves for a mistrial on the basis of reversible error not arising from evidentiary insufficiency or prosecutorial or judicial overreach, and the mistrial is granted, jeopardy does not ordinarily bar a retrial, because the mistrial motion is functionally equivalent to an appeal based on the same trial error.

It may be considered strange that the same type of error may be accorded different treatment by the court depending on which party challenges the error. This difference in treatment, however, is based on sound policy considerations. We earlier noted that one of the major purposes of the double jeopardy bar was a historical one, based on the fact that prosecutors could harass the defendant by beginning trial and then moving for mistrial, thereby subjecting him to additional trials. Unless the occasion for mistrial is a manifest necessity beyond the control of the prosecutor or judge, the prosecution should not be permitted to move for and obtain a mistrial. Otherwise, the door is open for successive trials under the absolute control of the prosecutor.

Looking at reversible error committed by the state from the defendant's standpoint, different considerations come into play. First, it could well be that the defendant may not wish to request a mistrial, but would prefer to have a jury determination of the case and, if convicted, then appeal the error.[11]

---

[11] Mr. Justice Goldberg recognized this point in his dissent in *United States v. Tateo*, 377 U.S. 463, 474, 12 L. Ed. 2d 448, 455, 84 S.Ct 1587, 1593 (1964):

The preservation of this option for the defendant to continue the trial accords recognition to his valued right to have his case considered by the same tribunal. However, a more accurate account of the process compels recognition of the need to maintain symmetry of treatment in the case where the defendant does move for and obtains the mistrial, and the situation where he either does not move for a mistrial, or his motion is denied, and he then appeals the error.

This symmetry of result is dictated by the fact that in *Burks v. United States*, 437 U.S. 1, 57 L. Ed. 2d 1, 98 S.Ct. 2141 (1978), a clear distinction was made between trial error and evidentiary insufficiency. In the case of trial error, a reversal on appeal will not prevent a retrial under double jeopardy. Thus, if the defendant wishes to assert this same error at trial with a motion for mistrial, or a post-trial motion for new trial, and it is granted, a further trial should not be precluded. To mandate otherwise would accord different treatment of the same error under double jeopardy principles, depending only on whether the error was successfully asserted by the defendant during trial, after trial, or on appeal.

In regard to a claim of evidentiary insufficiency, the same symmetrical result must follow. Such a claim is based on the proposition that the state has failed to prove all of the essential elements of the crime. If this is asserted successfully on the trial court level, it would result in a judgment of acquittal and jeopardy would bar a retrial, since the prosecutor, having had a fair opportunity to present his entire case, should be foreclosed from a second trial under double jeopardy. For this same reason, if the motion is denied on the trial court level and the ground of evidentiary insufficiency is

---

"Any experienced trial lawyer aware of the realities of jury trials will recognize the difference between the two cases. Many juries acquit defendants after trials in which reversible error has been committed, and many experienced trial lawyers will forego a motion for a mistrial in favor of having his case decided by the jury."

successfully asserted on appeal, a judgment of acquittal results on appeal and retrial is barred.[12] We recognized this principle of evidentiary insufficiency in Syllabus Points 4 and 5 of *State v. Frazier*, ____ W.Va. ____, 252 S.E.2d 39 (1979).[13] *See State v. Milam*, 163 W.Va. 752, 260 S.E.2d 295, 302-03 (1979), and *State v. Dobbs*, 163 W.Va. 630, 259 S.E.2d 829 (1979).

This Court has confronted midtrial termination problems and has essentially treated them under the manifest necessity rule. In *State ex rel. Dandy v. Thompson*, 148 W.Va. 263, 134 S.E.2d 730 (1964), *cert. denied*, 379 U.S. 819, 13 L. Ed. 2d 30, 85 S.Ct. 39, we held that the intro-

---

[12] *Burks v. United States*, 437 U.S. 1, 15-16, 57 L. Ed. 2d 1, 12-13, 98 S.Ct. 2141, 2149-50 (1978), expressed these concepts as follows:

"In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, *e.g.*, incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct.

. . .

"The same cannot be said when a defendant's conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble. Moreover, such an appellate reversal means that the government's case was so lacking that it should not have even been *submitted* to the jury. Since we necessarily afford absolute finality to a jury's *verdict* of acquittal—no matter how erroneous its decision—it is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty." [Emphasis in original].

[13] Syllabus Points 4 and 5 of *State v. Frazier* are:

"The Double Jeopardy Clause of the Federal and this State's Constitutions forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding."

"In order to determine if there is evidentiary insufficiency that will bar a retrial under double jeopardy principles, such determination is made upon the entire record submitted to the jury and not upon the residual evidence remaining after the appellate court reviews the record for evidentiary error."

duction of inadmissible evidence by the State does not constitute a ground for manifest necessity so that the trial court could *sua sponte* declare a mistrial and avoid the jeopardy bar.[14] In *State ex rel. Brooks v. Worrell*, 156 W.Va. 8, 190 S.E.2d 474 (1972), the trial court *sua sponte* declared a mistrial when it was found that a witness, a deputy sheriff, had made derogatory remarks to the bailiff about defense counsel from the witness stand while the court and counsel were in chambers and the jury was in the courtroom. This Court held that jeopardy barred a retrial, since a showing of manifest necessity had not been made.

The issue in *State v. Little*, 120 W.Va. 213, 197 S.E. 626 (1938), was whether the prosecution's successful request for mistrial when a State's witness did not promply appear after the noon recess was justified by manifest necessity. We held that it was not and that, as a consequence, double jeopardy barred a retrial. In *State v. Bennett*, 157 W.Va. 702, 203 S.E.2d 699 (1974), *overruled on other grounds, State v. Adkins*, 163 W.Va. 502, 253 S.E.2d 146 (1979), the defendant's motion for mistrial, based on the fact that a State's witness had inadvertently volunteered information that was inadmissible and prejudicial to the defendant, was refused by the trial court on the basis that jeopardy might attach. On appeal, we reversed, stating:

> "As the motion for mistrial was made by the defendant and not by the court, we are of the opinion that the principles enunciated in the *Brooks* case, *supra*, and Code 1931, 62-3-7 do not apply. The right of a defendant to question the propriety of the discharge of a jury during trial for manifest necessity by a subsequent plea of autrefois acquit does not arise where a mistrial was obtained at the instance of the accused and

[14] *Dandy* sustained retrial on the alternate ground that the defendant had moved for a mistrial on the ground that he had not been present at a critical stage of the trial proceeding. This was a correct result, since the defendant's mistrial motion was based on a claim of reversible error.

was not attributable to prosecutorial or judicial overreaching." [Citations omitted]. [157 W.Va. at 706-07, 203 S.E.2d at 702].

The *Bennett* Court went on to suggest that a manifest necessity did exist,[15] but this is doubtful, since we had recognized in *State ex rel. Dandy v. Thompson, supra,* that the admission of inadmissible evidence prejudicial to the defendant does not ordinarily constitute a manifest necessity which would permit the court to declare or the prosecutor to seek a mistrial. The proper course is that the option to request a mistrial rest with the defendant.[16]

*State v. Shelton,* 116 W.Va. 75, 178 S.E. 633 (1935), involved a trial court's *sua sponte* declaration of mistrial when it discovered that there had been a separation of the jury. This Court concluded that there was sufficient evidence of manifest necessity and that a retrial was not barred by jeopardy. This must be tempered in light of subsequent United States Supreme Court holdings which require the exploration of alternatives before a mistrial for manifest necessity can be granted *sua sponte. Arizona v. Washington, supra; United States v. Jorn,* 400 U.S. 470, 27 L. Ed. 2d 543, 91 S.Ct. 547 (1971) (plurality opinion); *see, e.g., Harris v. Young,* 607 F.2d 1081 (4th Cir. 1979); *United States v. MacQueen,* 596 F.2d 76 (2d Cir. 1979); *United States v. Pierce,* 593 F.2d 415

---

[15] It is clear from *Bennett* that there was no claim that the prejudicial evidence introduced in the State's case was a result of prosecutorial overreach.

[16] It is apparent that by leaving the option with the defendant to elect whether to seek mistrial or continue with the case, the defendant, if he elects to continue with the trial, is put to the task of making an objection to the trial error in order to preserve the point on appeal. However, this burden is nothing more than the ordinary requirement mandating that the defendant must object to trial error in order to preserve the point for appeal. *State v. Burton,* 163 W.Va. 40, 254 S.E.2d 129, 140 (1979); *State v. Starkey,* ____ W.Va. ____, 244 S.E.2d 219, 227 (1978); *State v. Thomas,* 157 W.Va. 640, 650, 658-59, 203 S.E.2d 445, 452-53, 457 (1974); Syllabus Point 4, *State v. Knotts,* 156 W. Va. 748, 197 S.E.2d 93 (1973). When the objection is made, the trial court is at liberty to attempt to cure the error by appropriate instructions to the jury.

(1st Cir. 1979); *United States v. Sanders*, 591 F.2d 1293 (9th Cir. 1979).

In *State ex rel. Dowdy v. Robinson*, 163 W.Va. 154, 257 S.E.2d 167 (1979), the defendant had successfully procured a directed verdict of acquittal on a breaking and entering charge when the State failed to prove the correct street address of the victimized business. A majority of this Court appears to have perceived that jeopardy foreclosed a retrial under *Sanabria v. United States*, 437 U.S. 54, 57 L. Ed. 2d 43, 98 S.Ct. 2170 (1978), which dealt with the trial court's acquittal of the defendant because of the failure by the government to prove an element of the criminal offense, which was the violation of the state's gambling statute. *Dowdy* can only be viewed as having considered the street address as an integral element of the offense under the rule of *State v. McGraw*, 140 W.Va. 547, 85 S.E.2d 849 (1955), which it cited.[17]

In the present case, it is clear from the record that the motion for mistrial was not based on the ground that the State had failed to prove a prima facie case. It rather rested on the fact that the prosecution introduced evidence of the defendant's blood alcohol test, but failed to properly authenticate the test as having complied with the Department of Health methods and standards as required by W.Va. *Code*, 17C-5A-5, and by our cases of *State v. Dyer*, 160 W.Va. 166, 233 S.E.2d 309 (1977), and *State v. Hood*, 155 W.Va. 337, 184 S.E.2d 334 (1971). There is no claim that this was occasioned by prosecutorial overreach, which is characterized by the element of bad faith. It is likewise clear that the doctrine of manifest necessity is not applicable, since this evidentiary error

---

[17] *State v. McGraw*, 140 W.Va. 547, 85 S.E.2d 849 (1955), concluded that there may be those occasions where words inserted in an indictment, which do not represent essential elements of the crime but bear directly as a description of an element of the crime, become a critical part of the element and must be proved the same as any element of the crime. It is doubtful that the *McGraw* case can be accorded substantial further vitality in this area of double jeopardy.

was under the control of the prosecution. *Donum v. United States, supra; State ex rel. Dandy v. Thompson, supra.* What did exist was a trial error which prejudiced the defendant and placed him in the position of having either to request a mistrial or to make an objection and seek an ultimate resolution from the jury with the right of an appeal if the jury convicted. The defendant's election to seek a mistrial does not bar retrial, since the same result would have occurred on appeal.

## II

The remaining question is whether the indictment charging the relator with a second offense of drunk driving under W. Va. *Code,* 17C-5-2(d),[18] is invalid, as relator contends, because he committed his first offense under the prior enactment of that Code section, which made it illegal "for any person who is under the influence of intoxicating liquor" to drive. W. Va. Code, 17C-5-2(a) [1966]. Relator urges that the present statute has created a new and distinct crime by providing that it is "unlawful ... for any person to drive ... while ... under the influence of alcohol ....", W. Va. Code, 17C-5-2(a)(1), so that the former offense cannot be considered under the new statute's second offense provision.

Relator relies upon *State v. Mason,* 141 W.Va. 217, 89 S.E.2d 425 (1955), and *State v. Thomas,* 163 W.Va. 32, 253 S.E.2d 554 (1979), both of which involved the offense of driving while intoxicated. In Syllabus Point 1 of *Mason,* we stated the general rule as to the effect to be given the repeal and simultaneous reenactment of a statute punishing repeat offenders:

"An act of the Legislature which repeals and simultaneously re-enacts a statute relating to a

---

[18] W. Va. *Code,* 17C-5-2(d), provides in material part:

"A person violating any provision of subsection (a) or (b) of this section shall, for the second offense occurring within a five-year period, be guilty of a misdemeanor, and, upon conviction thereof, shall be imprisoned in the county jail for a period of not less than six months nor more than one year, which sentence shall not be subject to probation...."

specific offense does not interrupt the continuous force of such statute, and an indictment thereunder may validly charge a 'second offense', even though the conviction of the alleged 'first offense' occurred prior to such repeal and re-enactment."

*Cf. Chesapeake & Potomac Co. v. State Tax Dept.*, 161 W.Va. 77, 239 S.E.2d 918 (1977), and *Burns v. Hays*, 44 W.Va. 503, 30 S.E. 101 (1898) (same rule in civil context).

The *Mason* Court found this rule inapplicable where the definition of the elements of the crime had changed. Specifically, the first drunk driving offense in *Mason* was committed under a 1950 statute which provided that it was unlawful "to drive" while intoxicated. A 1951 amendment modified the language to state that it was unlawful "to drive or be in actual physical control of any vehicle" while intoxicated. Mason committed the second offense while this amendment was in force. The Court concluded that "actual physical control" materially changed the offense from mere "driving" so as to create a different crime.

Here, we are not confronted with a statutory amendment which changes either the basic substantive elements of the drunk driving offense or its punishment. *Cf. Adkins v. Bordenkircher*, ____ W. Va. ____, 262 S.E.2d 885 (1980) (retroactive change in good time credit statute). The new statutory phrase, to drive while "under the influence of alcohol," is substantially similar to the old language, driving "under the influence of intoxicating liquor." Several courts have had occasion to consider whether such phrases are synonymous and have concluded that they are. *State v. Davis*, 196 N.W.2d 885, 890 (Iowa 1972); *State v. Cox*, 478 S.W.2d 339 (Mo. 1972); *State v. Medearis*, ____ N.D. ____, 165 N.W.2d 688, 692-93 (1969); see *State v. Miles*, 8 Or. App. 189, 492 P.2d 497 (1972).

It is true that in our per curiam opinion in *State v. Thomas*, 163 W. Va. 32, 253 S.E.2d 554 (1979), we held that an indictment for driving under the influence of intoxicating liquor was invalid, since it was not drawn in

accordance with the new statutory phraseology of driving under the influence of alcohol. But the State had confessed error on this point and we, therefore, had no occasion to discuss the merits of the question.

We believe that Syllabus Point 1 of *State v. Mason, supra,* controls the disposition of this case where the reenactment of the statute does not change the basic elements of the crime or the punishment.

In view of our holdings as to double jeopardy and as to the validity of the second offense indictment, we decline to issue the writ of prohibition.

*Writ denied.*