STATE OF WEST VIRGINIA

*v.*

LEMUEL WHITTINGTON

(No. 14784)

Decided November 17, 1981.

*Michael T. Clifford and Leo Catsonis* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Thomas N. Trent and James V. Cann,* Assistant Attorneys General, for defendant in error.

PER CURIAM:

Appellant Lemuel Whittington was convicted in the Circuit Court of Nicholas County upon an indictment which charged him with driving a motor vehicle "while . . . under the influence of intoxicating liquors." Prior to the

appellant's arrest and conviction, *W. Va. Code,* 17C-5-2(a) [1966] made it illegal "for any person who is under the influence of intoxicating liquor" to drive. However, this statute was amended effective May 30, 1976, to provide that it is "*unlawful . . . for any person to drive . . . while . . . under the influence of alcohol. . . .*" Appellant contends that: (1) his conviction is void because he was convicted of a crime which did not exist on January 4, 1979, the date of his conviction, and (2) his conviction should be reversed because the conduct of the trial court denied him due process of law. For the reasons set forth below, we disagree and affirm the conviction.

With respect to his first assignment of error, appellant relies principally upon *State v. Thomas,* 163 W.Va. 32, 253 S.E.2d 554 (1979), a per curiam opinion in which Lawrence Thomas was convicted of driving under the influence of intoxicating liquor after the statute had been amended to change the word "liquor" to "alcohol." Mr. Thomas contended that he had been convicted of a statutory crime which did not exist at the time of its alleged commission. The State confessed error and we reversed and set aside the verdict.

The appellant argues that the facts of his case are identical to those in *Thomas* and that his conviction should be reversed by virtue of the result reached in that case. We disagree.

In *State ex rel. Betts v. Scott,* ___ W.Va. ___, 267 S.E.2d 173 (1980), we dealt with this issue[1] in a different factual setting and stated:

> "Here, we are not confronted with a statutory amendment which changes either the basic substantive elements of the drunk driving offense or its punishment. *Cf. Adkins v. Bordenkircher,* W.Va., 262 S.E.2d 885 (1980) (retroactive change in good time credit statute). The new statutory phrase, to drive while "under the influence of alcohol," is

---

[1] The issue in *Betts* went to the validity of an indictment which charged the relator with a second offense of drunk driving under the amended code section when his previous offense occurred under the prior enactment of the drunk driving statute.

substantially similar to the old language, driving "under the influence of intoxicating liquor." Several courts have had occasion to consider whether such phrases are synonymous and have concluded that they are. *State v. Davis*, 196 N.W.2d 885, 890 (Iowa 1972); *State v. Cox*, 478 S.W.2d 339 (Mo.1972); *State v. Medearis*, N.D., 165 N.W.2d 688, 692-93 (1969); see *State v. Miles*, 8 Or.App. 189, 492 P.2d 497 (1972)." 267 S.E.2d at 183.

Because the re-enactment of the statute did not change the basic elements of the crime or the punishment, we found syllabus point 1, in part, of *State v. Mason*, 141 W.Va. 217, 89 S.E.2d 425 (1955) to be controlling:

> "An act of the Legislature which repeals and simultaneously re-enacts a statute relating to a specific offense does not interrupt the continuous force of such statute. . . ."

In *Betts* we recognized the result in *State v. Thomas*, a case decided over a year earlier, but added that ". . . the State had confessed error on this point and we, therefore, had no occasion to discuss the merits of the question." Id. at 267 S.E.2d 183. *State ex rel. Betts v. Scott, supra,* now correctly states the law on this question. Therefore, we find appellant's first assignment of error to be without merit.

The second question for our determination is whether certain comments and conduct of the trial judge were prejudicial to the appellant so as to deny him due process of law. In particular, the appellant complains that in two instances during the trial, the judge may have given the jury an inference that he believed the defendant to be guilty.

Prior to examining the comments in question, we note the customary rule in this State on trial court conduct which was applied in the recent case of *State v. Wotring*, ____ W.Va. ____, 279 S.E.2d 182, 190 (1981):

> "The trial judge in a criminal trial must consistently be aware that he occupies a unique position in the minds of the jurors and is capable, because

of his position, of unduly influencing jurors in the discharge of their duty as triers of the facts. This Court has consistently required trial judges not to intimate an opinion on any fact in issue in any manner. In criminal cases, we have frequently held that conduct of the trial judge which indicates his opinion on any material matter will result in a guilty verdict being set aside and a new trial awarded. *See State v. Pietranton,* 137 W.Va. 477, 72 S.E.2d 617 (1952); *State v. Summers,* 118 W.Va. 118, 188 S.E. 873 (1936); *State v. Shelton,* 116 W.Va. 75, 178 S.E. 633 (1935); *State v. Austin,* 93 W.Va. 704, 117 S.E. 607 (1923); *State v. Staley,* 45 W.Va. 792, 32 S.E. 198 (1899); and *State v. Hurst,* 11 W.Va. 54 (1877)."[2]

We have also recognized that a trial court has the right to control the orderly process of a trial and may intervene so long as his conduct does not discriminate against or prejudice the defendant's case. *State v. Burton,* 163 W.Va. 40, 254 S.E.2d 129, 138 (1979). Furthermore, "a claim of improper trial court intervention must on occasion be viewed more broadly than from the narrow perspective of the incident itself." 254 S.E.2d at 138.

The first exchange appellant relies upon was during cross-examination of a state police trooper:

"Q. [By defense counsel] What is the reason you took him to jail instead of state police headquarters?

"A. AT (sic) the state police headquarters there is a breathalyzer 900 machine over there which if anybody wanted to, if anybody wanted to cheat and lie just to win a case, they could get the needle and run that needle over as far as they wanted to. Whereas, downstairs in the jail there is a breathalyzer 1,000 which is all computer.

"Q. You mean to tell this jury you fellows have a machine you can get any results you want and yet you still use it?

---

[2] *See also: State v. McGee,* ___ W.Va. ___, 230 S.E.2d 832, 835-36 (1976), overruled on other grounds in *State v. McAboy,* ___ W.Va. ___, 236 S.E.2d 431 (1977).

"MR. BISCHOFF: Objection.

"THE COURT: I'm going to sustain the objection.

"Q. What you're saying, then, the reason you took the test on the one at the courthouse and not the one at your office, that the one at your office could be manipulated anyway and the other one can't, is that right?

"A. You're saying that the one at the state police office can be set up?

"Q. That's what you said.

"A. Yes, sir, that's correct. The one up there can.

"THE COURT: I'm going to interpose an objection myself on behalf of the State. You have a stipulation here, gentlemen. Aren't you going to be bound by it? You sit over there and don't say anything, Mr. Bischoff. There has been stipulated on both sides---

"MR. WOLVERTON: We're not objecting to the results, your Honor. We just want to know who gave the tests.

"THE COURT: Well, you're attacking the integrity of it.

"MR. WOLVERTON: That's all."

The stipulation referred to by the court in the above testimony was entered into between the appellant and the State. It provided that: (1) the results of the breathalyzer (.11) and the blood test (.09) performed upon the defendant were proper under applicable law and were to be admitted into evidence without comment by either party except during opening statements, closing arguments and instructions; and, (2) both sides would have the opportunity to present evidence interpreting or explaining the results of either test found to be admissible.

The second instance relied upon by the appellant occurred during the State's direct examination of a state police chemist:

"Q. Lt. Barber, this question relates to an average person. Would the nonconsumption of any alcohol or alcoholic beverages reduce the blood alcohol content in a person over a period of time?

"MR. WOLVERTON: We object, your Honor, for the reason he is attempting to attack the stipulation again.

"THE COURT: No, I'm going to overrule the objection. You may answer the question as asked."

The court then sustained a second objection to the question as asked, and it was rephrased by the prosecuting attorney:

"Q. ... If an average person stops consumming (sic) alcoholic beverages after some beverages have been consummed (sic), does the blood alcohol content or percentage of that person decrease?"

Defense counsel's objection to the question was overruled and the trooper answered that the average rate of decrease is 0.015 percent blood alcohol per hour.

In the first exchange, it is clear that appellant's counsel was in violation of the provisions of the stipulation when he attempted by his questioning of the trooper to attack the integrity of the breathalyzer test itself. And in the second instance, the trial judge was merely abiding by the stipulation again when he allowed the prosecuting attorney to question the chemist about the reduction of alcohol content in the blood after a certain period of nonconsumption. The State's attorney was obviously attempting to explain to the jury the lower results of the blood test which was administered to the defendant some time after the breathalyzer. The stipulation expressly provided for such an explanation and the court's ruling on the appellant's objection was not error.

Although we are concerned with and do not encourage an objection by the Court on behalf of the State in any instance, under the principles set forth above we do not find the court's comment in this case to be reversible error. Viewing the incidents in question from the broad perspective of the entire trial, it cannot be said that the court's conduct prejudiced the appellant in any manner.

For the foregoing reasons, we affirm the judgment of the Circuit Court of Nicholas County.

*Affirmed.*