355 S.E.2d 405

**James KELLER**

v.

**The Honorable Alfred E. FERGUSON, Circuit Court Judge, etc., and John Cummings, Prosecuting Attorney of Cabell County.**

**No. 17505.**

Supreme Court of Appeals of West Virginia.

March 19, 1987.

Phillip C. Duff, Huntington, for appellant.

Charles G. Brown, Atty. Gen., and Mary Beth Kershner, Asst. Atty. Gen., Charleston, for appellees.

MILLER, Justice:

A mistrial was granted during the trial of the petitioner, James Keller, after the prosecutor claimed the petitioner's attorney asked improper questions of a State's witness on cross-examination. Mr. Keller now seeks a writ of prohibition to prevent his retrial upon two grounds: (1) that he was deprived of his right to a speedy trial in violation of W.Va.Code, 62–3–1, and (2) that his retrial is barred by former jeopardy because there was no "manifest necessity" to terminate his initial trial. We hold that the petitioner waived his statutory right to a speedy trial by failing to make a timely motion asserting his right to a trial within one term. However, we also hold that the

record does not support a finding of manifest necessity and accordingly award the writ.

I.

James Keller was indicted for the crime of extortion during the September term of the Cabell County grand jury.[1] An attorney was promptly appointed to represent him and his trial was scheduled for November 14, 1985. Over the ensuing twelve months, the trial was continued on eight occasions. On November 14, 1985, a continuance was granted because, as the record discloses, "[s]omebody needed the case reset," though the moving party is not identified. On December 19, 1985, the court granted a motion for continuance on behalf of the State, but no specific grounds were cited. During the months of February and March, 1986, the court twice rescheduled the trial date on its own motion.

On July 23, 1986, a jury was impaneled, but not sworn. On the next day, before any witnesses had been produced, the State advised the court that Betty Lou Anderson, the alleged victim, could not be located. To enable the State to locate its key witness, the court adjourned until July 28, 1986, at which time it was informed that the State's attempts to do so had been unsuccessful. On motion of the State, the trial was then reset for August 25, 1986.[2] Two additional continuances were granted in September due to the unavailability of the judge and the illness of Mr. Keller's attorney.

Finally, on November 17, 1986, Mr. Keller's trial began. The State called Ms. Anderson as its first witness. On cross-examination, Mr. Keller's attorney sought to impeach the witness's credibility by asking: "I'm told you entered a plea of guilty to welfare fraud in Lawrence County, Ohio." Prior to an answer by the witness, the prosecutor objected and at a bench conference, it was revealed the witness had

---

1. The terms of court for Cabell County, which comprises the Sixth Judicial Circuit, begin "on the first Monday in January and May, and on the second Monday in September." W.Va.Code, 51–2–1f.

2. We find no record of a motion, either oral or written, to continue the August 25, 1986 trial date. At a hearing on September 2, 1986, the trial court observed he "wasn't available all of last week so [he] put it over to today so [he] could reset it today."

not been formally charged with any offense though she had received welfare money for which she was not qualified and had voluntarily agreed to repay it to the appropriate authority.

Based on this information, the State moved for a mistrial on the ground that the question had presupposed some criminal wrongdoing, which, in fact, could not be shown, and that the question was improper. The court denied the motion and expressly held that no manifest necessity existed. He then recommended simply that the witness answer "no" to the question as it had been propounded to her.[3]

Later during cross-examination of the same witness, Mr. Keller's attorney attempted to renew a line of questioning he had developed earlier regarding her refusal to discuss the case with him prior to trial. The following exchange then occurred:

"Q  I want to get back to the business—I don't know how to characterize it—not wanting to talk or refusing to talk to me after being in the courthouse down in Judge O'Hanlon's office.  Do you remember?

"A  Yes, the reason I didn't want to talk to you was it was a very tragic time for me and I don't want to recall the time.

"Q  Is that why you were here in Judge O'Hanlon's office?

"A  It was tragic time, the time I spent dealing with him on Saturday and Sunday; and that's what you wanted to talk about.

"Q  This was just a few months ago when your son-in-law was sentenced by Judge O'Hanlon.  You and your daughter were there for the sentencing."

Once again, the prosecutor objected and at a bench conference moved for a mistrial, objecting to the relevance of the question and its prejudicial effect.  The court granted the State's motion.

## II..

We address initially the argument by the petitioner that he was deprived of his right to a speedy trial under W.Va.Code, 62–3–1, commonly known as the one-term rule.[4] As we explained in *State ex rel. Workman v. Fury*, 168 W.Va. 218, 283 S.E.2d 851 (1981), the one-term rule does not embody a right of constitutional dimension, but "provides a personal right to the defendant to be tried more expeditiously than the Constitution requires."  168 W.Va. at 221, 283 S.E.2d at 853.  *See also Pitsenbarger v. Nuzum*, 172 W.Va. 27, 303 S.E.2d 255 (1983).

We recognized in Syllabus Point 7 of *Good v. Handlan*, 176 W.Va. 145, 342 S.E.2d 111 (1986), that the one-term rule is not limited to the term of the indictment:

"W.Va.Code, 62–3–1, is not limited to the term of court at which an indictment is returned, but is applicable to any term of court in which an accused asserts his right to a prompt trial.  Where such right is asserted, the accused must be tried during that term unless good cause can be shown for a continuance."

■ We have held, however, that the protection afforded by this rule is not self-operating and that "the burden is properly upon the defendant to make a record if he is to assert this right or assign error to its denial."  *State ex rel. Workman v. Fury*, 168 W.Va. at 221, 283 S.E.2d at 853.  Our decision in *Good v. Handlan*, 176 W.Va. at 151, 342 S.E.2d at 116, makes it clear that a defendant must assert his speedy trial right under the one-term rule by a timely written motion: "[A] defendant can assert his right to a prompt trial under W.Va. Code, 62–3–1, after the term in which the

---

**3.** The court commented in this regard: "It's done improperly; but if you want a mistrial, I don't know if we have manifest necessity to declare a mistrial.  I'm figuring a way to get through.  He asked her if she had been convicted of welfare fraud and she will answer 'no.' That will be my ruling."

**4.** W.Va.Code, 62–3–1, provides in relevant part: "When an indictment is found in any county,

against a person for a felony or misdemeanor, the accused, if in custody, or if he appear in discharge of his recognizance, or voluntarily, shall, unless good cause be shown for a continuance, be tried at the same term."  We note that the petitioner does not raise a claim under our three-term rule, W.Va.Code, 62–3–21, and we do not address it.

indictment is returned provided that he makes a timely motion for the same." (Footnote omitted). Where such a motion is not timely made, a defendant's speedy trial rights are governed by the limitations imposed by Article III, Section 14 of the West Virginia Constitution and our three-term rule, W.Va.Code 62–3–21.[5]

Upon a review of the record before us, including the transcripts of hearings upon the various motions for continuance, we find no indication that the petitioner positively asserted his rights under the one-term rule. We, therefore, hold he has no basis upon which to assert a violation of W.Va.Code, 62–3–1.

### III.

Mr. Keller asserts in the alternative that the trial court lacked a manifest necessity to discontinue his trial and that his retrial for the same offense is prohibited by former jeopardy. The Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This provision was made applicable to the states through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The West Virginia Constitution contains a similar provision which guarantees that "[n]o person shall ... be twice put in jeopardy of life or liberty for the same offence." W.Va. Const. art. III, § 5.[6]

In Syllabus Point 1 of *Conner v. Griffith*, 160 W.Va. 680, 238 S.E.2d 529 (1977), we adopted from *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the three general protections afforded by the Double Jeopardy Clause:

"The Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution, provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. It protects against a second prosecution for the same offense after conviction. It also prohibits multiple punishments for the same offense." [7]

---

**5.** Our State constitution provides that "[t]rials of crimes, and misdemeanors, unless herein otherwise provided, shall be by a jury of twelve men, public, without unreasonable delay...." W.Va. Const. art. III, § 14. In Syllabus Point 1 of *Good*, we said: "It is the three-term rule, W.Va. Code, 62–3–21, which constitutes the legislative pronouncement of our speedy trial standard under Article III, Section 14 of the West Virginia Constitution." W.Va.Code, 62–3–21, provides, in relevant part:

"Every person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, *shall be forever discharged from prosecution of the offense*, if there be three regular terms of such court, after the presentment is made or the indictment is found against him, without a trial, unless the failure to try him was caused by [any one of four specified reasons]." (Emphasis added).

**6.** W.Va.Code, 62–3–7, also incorporates double jeopardy by stating: "And in any criminal case the court may discharge the jury, when it appears they cannot agree in a verdict, or that there is manifest necessity for such discharge." Obviously, its contours are determined by constitutional principles governing double jeopardy.

**7.** In *United States v. DiFrancesco*, 449 U.S. 117, 127–28, 101 S.Ct. 426, 432–33, 66 L.Ed.2d 328, 339–40 (1980), the United States Supreme Court outlined these principles as underlying the Double Jeopardy Clause:

"The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty....

\*   \*   \*   \*   \*   \*

"It has been said that 'a' or 'the' primary purpose of the Clause was to preserve the finality of judgments.... Central to the objective of the prohibition against successive trials is the barrier to affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.... [I]f the Government may reprosecute, it gains an advantage from what it learns at the first trial about the strengths of the defense case and the weaknesses of its own....

"... [T]he constitutional protection also embraces the defendant's valued right to have his trial completed by a particular tribunal." (Citations and interior quotation marks omitted).

■ Despite the fact that this language read literally does not cover the area where there has been a discharge of the jury before it has arrived at a verdict, it is clear that double jeopardy can also be implicated in this situation, which is often termed "midtrial terminations." *E.g., Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *Porter v. Ferguson*, 174 W.Va. 253, 324 S.E.2d 397 (1984); *State ex rel. Betts v. Scott*, 165 W.Va. 73, 267 S.E.2d 173 (1980). The general rule is that termination of a criminal trial arising from a manifest necessity will not result in double jeopardy barring a retrial. Justice Story is credited with the classic statement of this rule in *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824):

> "We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, *in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act,* or the ends of public justice would otherwise be defeated.... [T]he power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes...." (Emphasis added).

The term "manifest necessity" covers a broad spectrum of situations which in some instances bear little relationship to the literal meaning of this phrase. This is partic-ularly true in cases where the conduct of one party at trial has created sufficient jury prejudice toward the other that it is unfair to continue with the trial and a mistrial is warranted.[8]

■ Even on the subject of mistrials, the rules fashioned by the United States Supreme Court are not without their subtlety and may perhaps be characterized by a lack of an evenhanded approach. Where a prosecutor claims that the defense has by its actions prejudiced the jury, he is entitled to obtain a mistrial, without double jeopardy barring a retrial, if it can be shown: (1) that the conduct complained of was improper and prejudicial to the prosecution, and (2) that the record demonstrates the trial court did not act precipitously and gave consideration to alternative measures that might alleviate the prejudice and avoid the necessity of terminating the trial.[9] *Arizona v. Washington, supra.*

The State argues that our recent case of *Porter v. Ferguson, supra,* should control the outcome here, but its facts were more egregious. There, the court had made an *in limine* ruling that defense counsel could not inquire about a prior arrest of the chief prosecution witness. Despite this ruling, defense counsel made such inquiry to which the prosecutor immediately objected. At a conference in chambers, the judge admonished defense counsel and advised him that he should comply with the ruling or face possible contempt charges.

---

**8.** The most congruent cases to the literal meaning of manifest necessity are those where the trial must be stopped for reasons beyond the control of either party. *E.g., Perez v. United States, supra* (jury unable to arrive at a verdict); *Thompson v. United States*, 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146 (1894) (trial juror was found to have served on grand jury that indicted the defendant).

**9.** Where the defendant moves for a mistrial, his motion for mistrial ordinarily constitutes a waiver of his double jeopardy claim as "the defendant himself has elected to terminate the proceedings against him, and the 'manifest necessity' standard has no place in the application of the Double Jeopardy Clause." *Oregon v. Kennedy*, 456 U.S. at 672, 102 S.Ct. at 2088, 72 L.Ed.2d at 422, *citing United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). The Supreme Court recognizes an exception to the foregoing rule if the defendant's mistrial is produced by conduct termed "prosecutorial or judicial overreach." *E.g., Arizona v. Washington, supra; United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion). In *State ex rel. Betts v. Scott, supra,* we discussed a defendant's mistrial motion and pointed out that where the ground for the motion did not relate to prosecutorial or judicial overreach, the motion was functionally equivalent to asserting the same error on appeal. Such error would only result in a new trial under double jeopardy principles unless the error was evidentiary insufficiency. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

Subsequently, and in the face of these warnings, defense counsel again embarked on the same line of questioning. After a further bench conference, the court concluded that defense counsel's conduct was sufficiently prejudicial that a mistrial was warranted. The court also gave consideration to whether other alternatives such as cautioning the jury or giving an instruction at the close of trial would cure the prejudice and decided they would not.

■ The present case does not involve willful violations of a prior court ruling by defense counsel where it may be expected that the prior ruling was designed to forestall introduction of prejudicial evidence. The first inquiry relating to the witness's alleged plea to welfare fraud was handled in an admirable fashion by the trial court. After listening to the State's objection, the judge concluded that the incident did not give rise to sufficient prejudice to declare a manifest necessity because no substantial prejudice to the State's case had been demonstrated.

The second episode, however, was disposed of in a much more summary fashion even though its prejudicial effect was more tenuous since the question only suggested that the witness's son-in-law had received a sentence. Furthermore, the judge did not consider any alternatives that might have corrected this error by way of instructing the jury to disregard the question.

The right to obtain a mistrial based on manifest necessity arising out of improper questioning by the parties should not be easily obtainable. We echo the sentiments expressed in *Oregon v. Kennedy, supra,*[10] and recognize that some degree of latitude must be accorded to attorneys for both sides in the clash of the adversary criminal process. Other courts have come to much the same conclusion and have applied the double jeopardy bar where the defense attorney's remarks were either not sufficient-

ly prejudicial or, if they were, the court acted precipitously by not considering alternatives that would have cured the prejudice. *E.g., Spaziano v. State,* 429 So.2d 1344 (Fla.App.1983) (misstatement of evidence in opening remarks); *State v. Simpson,* 371 So.2d 733 (La.1979) (improper cross-examination regarding prior convictions); *Snee v. County Court of Cayuga County,* 31 A.D.2d 303, 297 N.Y.S.2d 414 (1969) (cross-examination regarding prior conviction of another witness); *Commonwealth v. Pyburn Constr. Co.,* 17 Mass.App. 927, 456 N.E.2d 480 (1983) (improper comments by defense counsel in closing arguments); *Commonwealth ex rel. Riddle v. Anderson,* 227 Pa.Super. 68, 323 A.2d 115 (1974) (inquiry regarding chastity of key witness in bastardy hearing); *see also* Annot., 14 A.L.R.4th 1014 (1982).

For the foregoing reasons, we award the writ of prohibition precluding a retrial in this case.

Writ Awarded.

---

**10.** The Supreme Court in *Kennedy,* 456 U.S. at 675, 102 S.Ct. at 2089, 72 L.Ed.2d at 424, in dealing with the question of prejudice flowing from objectionable conduct, remarked:

"Given the complexity of the rules of evidence, it will be a rare trial of any complexity in which some proffered evidence by the prosecutor or by the defendant's attorney will not be found objectionable by the trial court. Most such objections are undoubtedly curable by simply refusing to allow the proffered evidence to be admitted, or in the case of a particular line of inquiry taken by counsel with a witness, by an admonition to desist from a particular line of inquiry."