693 S.E.2d 82

**STATE of West Virginia ex rel. Lincoln Stuart TAYLOR, Defendant Below, Petitioner**

v.

**Honorable David R. JANES, Judge of the Circuit Court of Marion County, Respondent.**

No. 35287.

Supreme Court of Appeals of West Virginia.

Submitted March 10, 2010.

Decided April 5, 2010.

Martin P. Sheehan, Esq., Sheehan & Nugent, PLLC, Wheeling, WV, for Petitioner.

Daniel B. Dotson, III, Esq., Special Prosecuting Attorney, Ripley, WV, for Respondent.

KETCHUM, J.:

This matter is before the Court pursuant to a Petition for Writ of Prohibition filed by Lincoln Stuart Taylor, hereafter "Mr. Taylor." The record before us shows that Mr. Taylor was indicted for first degree murder and conspiracy to commit first degree murder. Those charges were tried before a jury in the Circuit Court of Marion County. At the conclusion of the trial, Mr. Taylor's jury acquitted him of conspiracy to commit first degree murder, but deadlocked on the first degree murder charge. A mistrial on the first degree murder count was declared and the matter set for retrial.

Prior to retrial, Mr. Taylor moved *in limine* to preclude the State from introducing evidence that he shot and killed the decedent or, in the alternative, to preclude the State from introducing evidence that he acted as a member of a group to kill the decedent. Mr. Taylor based his motion on the ground that those issues had been decided in his favor and the State's presenting those issues in the murder retrial would violate double jeopardy. The circuit court denied the motion, holding that double jeopardy did not require preclusion of the issues sought to be excluded by Mr. Taylor. Mr. Taylor then filed the Petition for Writ of Prohibition presently before us. For the reasons set forth herein, we find that double jeopardy does not require exclusion of the issues raised by Mr. Taylor and the petition for a Writ of Prohibition is therefore denied.

## I.

### Procedural and Factual History

On May 28, 2007, in the Bellview area of Fairmont, West Virginia, Derrick Osborne was shot multiple times upon exiting his vehicle near his home. Notwithstanding wounds to his throat, chest and side, Mr. Osborne attempted to run away from his attacker—who was continuing to fire shots at him—but made it only a short distance before collapsing in a nearby yard where he died. During the ensuing investigation, Mr. Taylor and three other men, Lafayette Jenkins, Steven Podolsky and Donell Lee, were identified by investigators as having planned Mr. Osborne's murder. Investigators ultimately concluded that it was Mr. Taylor who shot and killed Mr. Osborne.[1]

---

1. These facts are discussed in greater detail in Section III—Discussion, *infra.*

During the October 2007 term of the Circuit Court of Marion County, Mr. Taylor and three co-defendants were indicted for first degree murder and conspiracy to commit first degree murder. Prior to trial, Mr. Taylor moved to dismiss the conspiracy count on the basis that the indictment failed to allege an overt act. The trial court granted the motion and the conspiracy count was dismissed. Following dismissal, the State returned to the Grand Jury and secured a new conspiracy indictment against Mr. Taylor. This indictment, dated June 8, 2008, charged, in relevant part, that "[Mr. Taylor], Donell Lee, Steven Podolsky, and Lafayette Jenkins did conspire to commit the offense of First Degree Murder, W.Va.Code 61–2–1, and [Mr. Taylor] subsequently did murder Derrick Osborne by shooting him with a firearm causing his death. . . ." The sole overt act alleged in the new indictment was that Mr. Taylor shot and killed Derrick Osborne, hereafter "decedent," with a firearm. The new conspiracy indictment was consolidated with the murder indictment for trial.

Shortly following arraignment on the new indictment, Mr. Taylor's case proceeded to trial on the consolidated indictments of first degree murder and conspiracy to commit first degree murder.[2] However, a mistrial was subsequently declared for juror misconduct.[3]

Following the mistrial for juror misconduct, Mr. Taylor's case was again brought to trial. At trial, the State's theory of the case was straightforward. The State's evidence was that Mr. Taylor and others had a falling out with the decedent ostensibly over drugs and personality conflicts, and thereafter conspired to kill the decedent. The State presented evidence that Mr. Taylor "scouted the area where [the decedent] lived" and that Mr. Taylor obtained from another member of the conspiracy a handgun that was similar to one owned by Mr. Taylor (ostensibly so Mr. Taylor would be familiar with the operation of the handgun). The State contended that

on the night of the murder, co-conspirator Steven Podolsky drove Mr. Taylor to a location near the decedent's residence, where Mr. Taylor "dressed in dark clothes to blend into the night . . . took his position behind the bushes near [the decedent's] home, where he laid in wait to ambush [the decedent] . . . like the assassin that he was about to become."

At the conclusion of the trial, which lasted approximately two weeks, the jury indicated to the trial court that it had reached a verdict on one of the indictments, but was deadlocked on the other indictment. The jury did not specify in its message to the trial court on which indictment it had reached a verdict and which indictment it was deadlocked. Over objections of Mr. Taylor's counsel, an Allen Charge was given to the jury. After a renewed period of deliberation, the jury again sent word that it was still deadlocked on one indictment and that no further deliberation was likely to result in an unanimous verdict.

The trial court at that time accepted the jury's verdict, which revealed that the jury was not able to reach an unanimous verdict on the murder indictment, but had acquitted Mr. Taylor on the conspiracy indictment. The trial court entered a judgment of acquittal on the conspiracy indictment and declared a mistrial on the murder indictment, ordering that Mr. Taylor be promptly retried. Prior to retrial on the murder indictment, Mr. Taylor filed a motion requesting that the trial court bar the State from introducing, during retrial, any evidence that Mr. Taylor shot and killed the decedent.

In his motion to preclude the State from offering evidence that he shot and killed the decedent, Mr. Taylor argued that his acquittal on the conspiracy charge meant that the jury had necessarily decided either: (1) that Mr. Taylor did not commit the sole alleged overt act of the conspiracy, which was that

---

**2.** The original indictment and the new indictment for conspiracy, each having a unique case number, were consolidated for purposes of trial.

**3.** Mr. Taylor does not argue that the mistrial for juror misconduct has any relevance to the issues presently before the Court. It is referenced here

only as an aspect of the procedural history of this case and to clarify that all references in this opinion to "the record" pertain only to the record of Mr. Taylor's second trial, unless otherwise specifically noted.

Mr. Taylor shot and killed the decedent; and/or (2) that Mr. Taylor did not conspire with others to kill the decedent. Because the jury had necessarily decided these issues, issue preclusion (collateral estoppel), as a component of double jeopardy, barred the State from relitigating those issues in his retrial on the murder indictment.

In response, the State argued that it could not be said from the record or the jury's verdict that the jury necessarily decided the issue of whether Mr. Taylor shot and killed the decedent. Instead, it was equally likely that the jury could have decided that the State failed to prove that Mr. Taylor *conspired* with others to commit the murder. The State concluded by arguing that the inability to say with reasonable certainty what issue the jury had decided means that collateral estoppel is not implicated, and the State was entitled to introduce, during a retrial, evidence that Mr. Taylor shot and killed the decedent. Following full briefing and argument, the trial court denied Mr. Taylor's motion. The trial court agreed with Mr. Taylor that his "acquittal of conspiracy leads to issue preclusion as a component of double jeopardy," but that issue preclusion need not result in a complete bar to further prosecution on any theory. In concluding that Mr. Taylor's motion should be denied, the trial court held that it was

> ... unable to determine which issue [whether Mr. Taylor was part of a conspiracy or whether Mr. Taylor had shot and killed the decedent as alleged] was necessarily decided in Mr. Taylor's favor by the jury in its verdict of acquittal of the conspiracy charge against him and, accordingly, which issue should be precluded in Mr. Taylor's impending trial as a component of double jeopardy.

Without knowing which issue was necessarily decided by the jury, the trial court denied the motion and did not exclude any issue from being argued by the State in Mr. Taylor's retrial.

Following entry of the trial court's order, Mr. Taylor petitioned this Court for a writ of prohibition and we issued a rule to show cause.

## II.

### Standard of Review

We have previously held that claims involving double jeopardy are reviewed *de novo*. *See* Syllabus Point 1, *State v. Sears*, 196 W.Va. 71, 468 S.E.2d 324 (1996), where we held that "[b]oth the construction and scope of W.Va.Code, 62–12–13(a)(1)(A) (1988), the parole statute, and a double jeopardy claim are reviewed *de novo*." *See also, State v. Wright*, 200 W.Va. 549, 552, 490 S.E.2d 636, 639 (1997); *State v. Williams*, 215 W.Va. 201, 204, 599 S.E.2d 624, 627 (2004).

With this standard in mind, we turn to the issue before us.

## III.

### Discussion

Mr. Taylor argues that collateral estoppel, as a component of double jeopardy, bars the State from introducing evidence that Mr. Taylor shot and killed the decedent.

At trial, Mr. Taylor was prosecuted for two offenses, conspiracy to commit first degree murder and first degree murder. The conspiracy indictment alleged that Mr. Taylor, and others, entered into an agreement to murder the decedent and that *the* overt act of that conspiracy was that Mr. Taylor shot and killed the decedent with a firearm. The murder indictment alleges that Mr. Taylor, and two of the co-conspirators named in the conspiracy indictment, "feloniously, willfully, maliciously, intentionally, deliberately, premeditatedly and unlawfully" slayed, killed and murdered the decedent.

Mr. Taylor's case went to trial, at the conclusion of which the jury acquitted him of the conspiracy indictment and deadlocked on the murder indictment. This acquittal, Mr. Taylor argues, means that the State failed to prove either that: (1) Mr. Taylor entered into an agreement with the other co-conspirators to kill the decedent; *or* (2) Mr. Taylor shot and killed the decedent with a firearm (as was alleged as the sole overt act in the conspiracy indictment). Essentially, Mr. Taylor argues because the issue of whether he killed the decedent was an essential ele-

ment in the conspiracy indictment and is also an essential element in the murder indictment, the jury's acquitting him of the conspiracy charge must be given collateral estoppel effect—effect that precludes a *decided* issue from again being presented to a jury during any retrial on the murder indictment.

This case presents us with the first opportunity to reconsider our prior double jeopardy decisions in light of the United States Supreme Court's recent decision in *Yeager v. United States,* 577 U.S. ——, 129 S.Ct. 2360, 174 L.Ed.2d 78 (2009). In *Yeager* the Court reaffirmed its prior precedent regarding collateral estoppel (issue preclusion) as a component of double jeopardy, but reversed a body of federal case law which required courts to review the jury's inability to decide the deadlocked charge and whether that inability was rational in light of the acquittal on other charges. In reversing, the *Yeager* Court held that the jury's inability to reach a verdict on one or more charges is not to be considered when determining whether the defendant can be retried on the deadlocked charges. The "consideration of hung counts has no place in the issue-preclusion analysis." *Yeager,* 129 S.Ct. at 2368.

To determine whether *Yeager* requires that we modify any of our prior decisions, we will analyze the *Yeager* decision and consider whether it impacts any of our precedent on the issue of double jeopardy.

## IV.

### Double Jeopardy

■ Initially, we note that Article III, Section 5 of the *West Virginia Constitution* provides, in part, that "No person shall ... be twice put in jeopardy of life or liberty for the same offence." In *State v. Gill,* 187 W.Va. 136, 141, 416 S.E.2d 253, 258 (1992), *citing Conner v. Griffith,* 160 W.Va. 680, 238 S.E.2d 529 (1977), we recognized that our State's double jeopardy clause is "at least as

coextensive as those in the [Fifth Amendment to the United States Constitution]." In Syllabus Point 1 of *Conner,* we held that:[4]

The Double Jeopardy Clause in Article III, Section 5 of the *West Virginia Constitution,* provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. It protects against a second prosecution for the same offense after conviction. It also prohibits multiple punishments for the same offense.

## V.

### Yeager v. U.S.

In *Yeager,* the Court was asked whether double jeopardy barred the government from reprosecuting a defendant where a jury had acquitted the defendant on some counts in an indictment, but deadlocked on other counts—resulting in a mistrial on the deadlocked counts—where it could be shown that an *ultimate issue of fact* in the counts for which the defendant was acquitted was also an essential element in deadlocked jury counts. In essence, *Yeager* argued that the jury had already decided an essential issue in his favor, and to require him to again face trial on the deadlocked counts of his indictment—counts which required that the Government prove the same ultimate issue of fact—would violate double jeopardy.

### Two Vital Interests of Double Jeopardy

In addressing *Yeager*'s arguments, the Court reaffirmed its precedent that the constitutional prohibition against double jeopardy "embodies two vitally important interests." *Yeager,* 129 S.Ct. at 2365. The first interest is that the traditional principles of double jeopardy stand for "the 'deeply ingrained' principle that 'the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense.' " *Id.* The second interest is in "preserving the finality of the jury's judgment." 129 S.Ct. at 2366.

---

4. As to when jeopardy attaches, we have held that "[o]ne is in jeopardy when he has been placed on trial on a valid indictment, before a court of competent jurisdiction, has been arraigned, has pleaded and a jury has been impaneled and sworn." Syllabus Point 1, *Adkins v. Leverette,* 164 W.Va. 377, 264 S.E.2d 154 (1980).

*See also* Syllabus Point 4, *Manning v. Inge,* 169 W.Va. 430, 288 S.E.2d 178 (1982), where we held that "[j]eopardy attaches in a non-jury trial in a magistrate court which is exercising proper jurisdiction when the accused has been charged in a valid warrant and has entered a plea and the magistrate has begun to hear evidence."

The finality of judgments is preserved through the doctrine of collateral estoppel, which the *Yeager* Court noted is often more descriptively referred to as "issue preclusion." 129 S.Ct. at 2367 n. 4.

### Distinction Between Traditional Principles of Double Jeopardy and Collateral Estoppel

**Traditional Principles of Double Jeopardy:** Generally stated, the traditional principles of double jeopardy bar repeated "prosecution for the same identical act and crime." 4 W. Blackstone, *Commentaries on the Laws of England* 330 (1769). *See also Yeager,* 129 S.Ct. at 2371 (Scalia, J., dissenting). Therefore, the state may not reprosecute a defendant on a charge after being found not guilty on that charge. On the other hand, it is uniformly held that if a jury is unable to reach a decision on all charges against a defendant, resulting in a mistrial, that double jeopardy does not—absent other circumstances—prevent the state from reprosecuting the defendant on the deadlocked charges. Where a jury has deadlocked on a charge in an indictment, and a mistrial declared, jeopardy has not terminated and the state can properly retry the defendant on the deadlocked charge absent other circumstances. *Yeager,* 129 S.Ct. at 2366.

**Collateral Estoppel.** Issues relevant to collateral estoppel in criminal cases generally arise where a jury has acquitted a defendant on some charges, but has deadlocked on other charges, *and* where the acquitted charges and the deadlocked charges arise from the same or similar conduct and depend on the same or similar proof. The *Yeager* Court held that collateral estoppel precludes "relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." *Yeager,* 129 S.Ct. at 2366. " 'When an issue of ultimate fact has once been determined by a valid and final judgment' of acquittal, it 'cannot be relitigated' in a second trial for a separate offense." *Yeager, Id.* at 2367, citing *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

### *Yeager's* Standard of Analysis for Collateral Estoppel Claims

Whether the jury decided an issue of ultimate fact that precludes retrying a defendant is case specific. Citing *Ashe, Id.,* the *Yeager* Court noted that:

> ... To decipher what a jury has necessarily decided ... courts should 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'

*Yeager, Id.* at 2367.

As *Yeager* makes clear, a court's consideration in a collateral estoppel analysis is fact driven; however, *Yeager* also makes clear that a court should not consider the apparent inconsistencies between the jury's verdict of acquittal on some charges and its failure to return a verdict on other charges. "[T]he consideration of hung counts has no place in the [collateral estoppel] analysis," *Yeager, Id.* at 2368, because a jury speaks only through its unanimous verdict. In reaching this holding, the *Yeager* Court explained that:

> To ascribe meaning to a hung count would presume an ability to identify which factor was at play in the jury room. But that is not reasoned analysis; it is guesswork. Such conjecture about possible reasons for a jury's failure to reach a decision should play no part in assessing the legal consequences of a unanimous verdict that the jurors did return.

*Yeager, Id.* at 2368. (Footnote omitted).

### VI.

### Our Precedent

West Virginia's precedent is consistent with *Yeager* and has been our law for decades. In *State v. Johnson,* 197 W.Va. 575, 476 S.E.2d 522 (1996), we discussed the first of the two "vitally important interests" embodied in the double jeopardy clause, which *Yeager* identifies as the traditional principle of double jeopardy.

> ... [T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal

and compelling him to live in a continuous state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*State v. Johnson*, 197 W.Va. at 583, 476 S.E.2d at 530 (Citations omitted.).

However, in West Virginia our precedent holds that the traditional principles of double jeopardy generally do not prevent the state from reprosecuting a defendant where the defendant moves for, and is granted, a mistrial on the basis of reversible error or where a mistrial has been declared as a result of a jury's inability to reach a decision on all charges against a defendant. *See e.g.*, Syllabus Point 1, *State ex rel. Betts v. Scott*, 165 W.Va. 73, 267 S.E.2d 173, where we held that:

> Where, in a criminal case, the defendant moves for a mistrial on the basis of reversible error not arising from evidentiary insufficiency or prosecutorial or judicial overreach and the mistrial is granted, jeopardy does not ordinarily bar a retrial, because the mistrial motion is functionally equivalent to an appeal based on the same trial error.

*See also*, Syllabus Point 4, *Keller v. Ferguson*, 177 W.Va. 616, 355 S.E.2d 405 (1987), where we held that "[t]ermination of a criminal trial arising from a manifest necessity will not result in double jeopardy barring a retrial." [5] Mistrials resulting from a deadlocked jury are based on manifest necessity.

■ Our precedent has also acknowledged the second "vitally important interest" embodied in the prohibition against double jeopardy, which is that of collateral estoppel. Almost two decades ago Justice McHugh, writing for the Court in *State v. Porter*, 182 W.Va. 776, 392 S.E.2d 216 (1990), held in Syllabus Point 1 that:

> The principle of collateral estoppel applies in a criminal case where an issue of ultimate fact has once been determined by a valid and final judgment. In such case, that issue may not again be litigated between the State and the defendant. *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

In *Porter*, 182 W.Va. at 779–780, 392 S.E.2d at 219–220, we also approved the following analysis to be made in claims of collateral estoppel:

> The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' *Sealfon v. United States*, 332 U.S. 575, 579[, 68 S.Ct. 237, 240, 92 L.Ed. 180, 184 (1948)].

More recently, in *State v. Kent*, 223 W.Va. 520, 678 S.E.2d 26 (2009), Chief Justice Davis clarified that a jury's silence at a first trial as to an alternate theory of murder did not constitute an "acquittal" for purposes of barring defendant's conviction on that alternate theory of guilt at a retrial.[6]

---

5. In *Keller* we noted that:

> [t]he term "manifest necessity" covers a broad spectrum of situations which in some instances bear little relationship to the literal meaning of this phrase.

*Keller*, 177 W.Va. at 620, 355 S.E.2d at 409.

We also noted in *Keller* that "[t]he most congruent cases to the literal meaning of manifest necessity are those where the trial must be stopped for reasons beyond the control of either party." *Keller v. Ferguson*, 177 W.Va. at 620 n. 8, 355 S.E.2d at 409 n. 8 (citations omitted.).

6. In *Kent*, the defendant was charged with murder. At trial, the state presented alternate theories of how that murder occurred, and a verdict form was submitted to the jury for two of those theories—premeditated murder and felony murder. The defendant was convicted of premeditated murder, and the jury did not complete the second alternate theory verdict form. The defendant appealed his conviction, and we reversed on grounds not relevant to this discussion. On retrial, the defendant was again prosecuted under the alternate theories of premeditated murder and felony murder, but this time a jury found the

While our precedent is well established, in light of *Yeager* we reaffirm that collateral estoppel, as a component of double jeopardy, becomes an issue when a jury acquitted a defendant on one or more charges, but deadlocked on other charges, resulting in a mistrial on the deadlocked charges.

Where a jury has acquitted the defendant on one or more charges, but deadlocked on other charges, collateral estoppel will not bar retrial on the deadlocked charges, even though involving the same or similar facts, if the court determines the jury's acquittal could be rationally based upon an ultimate issue of fact that is not an ultimate issue of fact in the deadlocked charge.

■ Accordingly, we hold that where a jury has acquitted a defendant on one or more charges, but deadlocked on other charges, resulting in a mistrial on the deadlocked charges, a court must, upon motion, determine whether collateral estoppel bars the State from reprosecuting the defendant on the deadlocked charges.

■ In determining whether collateral estoppel bars retrial of a defendant following a trial where a jury acquitted the defendant on one or more charges, but deadlocked on other charges, a court must examine the record of the prior proceeding, taking into account the pleadings, evidence, jury charge, and all other relevant matter, and conclude whether a rational jury could have grounded its verdict of acquittal upon an issue other than the issue which the defendant seeks to bar from reprosecution.

We further agree with the *Yeager's* conclusion that a jury's inability to decide a charge in an indictment is a non-event and has no part in the analysis of whether collateral estoppel, as a component of double jeopardy, precludes introduction of an issue at retrial on a charge in an indictment for which the jury did not reach a verdict.

■ We therefore hold that in determining whether collateral estoppel, as a compo-

nent of double jeopardy, bars a retrial where a defendant has been acquitted by a jury on one or more charges, but a mistrial declared on other charges as a result of the jury being deadlocked, courts are not to consider the deadlocked charge in deciding whether collateral estoppel bars the defendant's retrial.

Courts must decide whether the jury's unanimous verdict necessarily decided the ultimate fact or issue sought to be barred on retrial. The possible reasons for a jury's failure to reach a verdict should play no part in the assessment of the legal consequences of an unanimous verdict. Because a jury speaks only through a unanimous verdict, its failure to reach a verdict cannot—by negative implication—be considered in determining whether the jury decided the ultimate fact or issues sought to be barred from reprosecution.

Having concluded that our precedent is unaffected by the Court's decision in *Yeager*, we turn to the specific issues before us.

### VII.

### Mr. Taylor's Claim of Collateral Estoppel (Issue Preclusion)

■ As an initial observation we note that, unlike the precedent in the federal courts—including *Yeager* and *Ashe*—our double jeopardy precedent does not require that a defendant prove that a prosecution is barred on double jeopardy grounds. Instead, our precedent on the burden of proof in such circumstances is the two-part process set forth in Syllabus Point 2, *State v. Sears*, *supra*, where we held that:

> In order to establish a double jeopardy claim, the defendant must first present a prima *facie claim* that double jeopardy principles have been violated. Once the defendant proffers proof to support a non-frivolous claim, the burden shifts to the State to show by a preponderance of the evidence that double jeopardy principles

---

defendant guilty of felony murder. The defendant appealed, claiming, *inter alia*, that double jeopardy was violated because the jury did not find him guilty of felony murder at the first trial and therefore, he had been "acquitted" of that

theory of guilt. In rejecting the argument, we concluded that the first jury had not "decided" the felony murder issue, even though it had been presented a verdict form where it could have chose that theory of guilt.

do not bar the imposition of the prosecution or punishment of the defendant.

■ It is clear to us that Mr. Taylor has met his burden to proffer a *prima facie* claim that his retrial on the murder indictment would violate double jeopardy. Mr. Taylor points to the fact that a critical issue of ultimate fact in *both* the conspiracy count and the murder count was that he killed Derrick Osborne. Under our law, a conspiracy indictment requires that the State allege an overt act made in furtherance of the conspiracy being alleged. In Mr. Taylor's case, that alleged overt act was that he shot and killed Derrick Osborne with a firearm. In the murder indictment, it is similarly alleged that Mr. Taylor killed Derrick Osborne. The allegation that Mr. Taylor killed Derrick Osborne is therefore clearly a "critical issue of ultimate fact in all of the charges against" Mr. Taylor. *Yeager,* 129 S.Ct. at 2368–69. The State could not convict Mr. Taylor on either count unless is was proven, beyond a reasonable doubt, that Mr. Taylor killed Derrick Osborne.

Mr. Taylor was acquitted of the conspiracy count, and the jury deadlocked on the murder count. Since the issue of whether Mr. Taylor killed Derrick Osborne was in both the conspiracy indictment and murder indictment, and the jury decided the conspiracy indictment in Mr. Taylor's favor, Mr. Taylor made a *prima facie* case, shifting the burden to the State to prove that double jeopardy does not bar a retrial.

To meet its burden, the State argues that double jeopardy does not bar Mr. Taylor's retrial because the jury did not, in acquitting Mr. Taylor of the conspiracy charge, necessarily decide the ultimate issue of whether Mr. Taylor shot and killed Derrick Osborne. Instead, the State argues, the jury could have only decided that the State failed to prove Mr. Taylor entered into an agreement with the alleged co-conspirators to kill Derrick Osborne. We agree that the jury's acquittal of Mr. Taylor does not mean that it necessarily decided the issue of ultimate fact—that Mr. Taylor shot and killed Derrick Osborne—in Mr. Taylor's favor.

In reaching our conclusion, we have relied upon the rationale of Justice McHugh in *State v. Porter, supra,* which we today elevate to the following point of law:

> In determining whether collateral estoppel bars retrial of a defendant following a trial where a jury acquitted the defendant on one or more charges, but deadlocked on other charges, a court must examine the record of the prior proceeding, taking into account the pleadings, evidence, jury charge, and all other relevant matter, and conclude whether a rational jury could have grounded its verdict of acquittal upon an issue other than the issue which the defendant seeks to bar from reprosecution.

Applying this analysis, we initially note that judgment of acquittal on the conspiracy count against Mr. Taylor was a "general verdict." The verdict form signed by the jury did not delineate or specify which element[s] the jury concluded that the State had failed to prove. The jury did not decide any special interrogatories that may have revealed the basis of their decision to acquit Mr. Taylor. Absent this clear statement from the jury, we must instead look to the record to determine whether a jury could rationally have grounded its verdict upon an issue other than that which the defendant seeks to preclude.

In reviewing the record, we find the trial court's charge to the jury—as to what the jury must find to convict Mr. Taylor of conspiracy to commit first degree murder—to be dispositive of Mr. Taylor's collateral estoppel claim. This jury charge is as follows:

> Before the defendant can be convicted of conspiracy to commit murder, the State of West Virginia must overcome the presumption that [Mr. Taylor], is innocent and prove to the satisfaction of the jury, beyond a reasonable doubt, that: [Mr. Taylor]; in Marion County, West Virginia; on, or about or before the 28th day of May, 2007; intentionally entered an agreement and conspired with other persons, to-wit: Lafayette Jenkins, Steven Podolsky, and Donell Lee; for the purpose of killing Derrick Osborne; and that [Mr. Taylor], Lafayette Jenkins, Steven Podolsky, and/or Donell Lee, conspirators; subsequent to the agreement; committed an overt act in

furtherance of the conspiracy, which conspiracy had not terminated.

If after impartially considering, weighing and comparing all the evidence, both that of the state and that of the defendant, the jury and each member of the jury is *convinced beyond a reasonable doubt of the truth of the charge as to each of these elements of conspiracy to commit murder,* you may find [Mr. Taylor] guilty as charged in the indictment[.] *If the jury and each member of the jury has a reasonable doubt of the truth of the charge as to any one or more of these elements of conspiracy to commit murder, you shall find the defendant not guilty.* (Emphasis added).

Reviewing the trial court's charge to the jury on the conspiracy count, it is clear that several critical issues of ultimate fact were required to be found by the jury before it could convict Mr. Taylor of conspiracy to commit first degree murder. These ultimate issues are that Mr. Taylor: (1) intentionally entered into an agreement; (2) conspired with all of the named co-conspirators for the purpose of killing Derrick Osborne; (3) committed the overt act of murdering the decedent in furtherance of the conspiracy; and (4) that the conspiracy had not been abandoned when the murder occurred.

The sole overt act alleged in the conspiracy indictment was that Mr. Taylor shot and killed the decedent. This alleged fact is also a critical issue of ultimate fact in the murder indictment. However, it cannot be rationally concluded from the record that the jury *necessarily* decided, in acquitting Mr. Taylor of the conspiracy charge, that Mr. Taylor did not shoot and kill the decedent.

Instead, the jury could have found that the conspiracy alleged in the indictment did not occur or had been abandoned before the murder occurred. It could also be that the jury did not believe Mr. Taylor shot and killed Derrick Osborne, as alleged. It is also a rational conclusion that members of the jury were split in their decision as to which of the *specific* elements they believed the State had failed to prove, but rather were only unanimous in their judgment that the State had failed to prove all of the elements, all the ultimate issues of fact, necessary to prove a conspiracy to commit first degree murder.

None of these factual scenarios were *necessarily* decided—to the rational exclusion of all others—by the jury in its decision to acquit Mr. Taylor. The trial court's charge to the jury was clear: "[i]f the jury and each member of the jury has a reasonable doubt of the truth of the charge *as to any one or more of these elements* of conspiracy to commit murder, you shall find the defendant not guilty." (Emphasis added).

Our decision is consistent with other jurisdictions that have considered criminal collateral estoppel cases following the decision in *Yeager. See, e.g., United States v. Howe,* 590 F.3d 552, (C.A.8 Ark.) (2009), where, following remand by the United States Supreme Court with directions to apply its decision in *Yeager,* the Court of Appeals held that defendant's retrial on a deadlocked jury count was not barred under collateral estoppel because the court was unable to conclude from the record that the ultimate issue of fact sought to be barred from reprosecution was necessarily decided by jury in its prior acquittal of the defendant in another count.

## VIII.

### Conclusion

■ Based upon our review of the entire record, we conclude that double jeopardy does not bar Mr. Taylor's retrial for first degree murder and that the State is not barred from presenting evidence supporting its theory of the case, including that Mr. Taylor interacted with others in carrying out the alleged murder and that Mr. Taylor was the shooter.[7] The petition for a Writ of Prohibition is therefore denied.

Writ Denied.

---

**7.** We want to express our concern as to the State's opening statement given in Mr. Taylor's trial. Assailing a defendant's character, and referring to voluminous Rule 404(b) evidence during an opening statement, is something done with considerable risk and is certainly not advisable. In opening statements, the prosecution should outline his case showing the defendant

Justice McHUGH, deeming himself disqualified, did not participate in the Decision of the Court.

Judge JAMES H. YOUNG, JR., sitting by temporary assignment.

was guilty of murder—not that the prosecutor believed that the defendant had a bad character.